## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JOHN WHITEHEAD and VERONICA
WHITEHEAD, *ward, by and through her duly
appointed Guardian,* VALERIE BROOKS,

　　　Plaintiffs,

　　　　　　　　v.

SOUTHERLAND, INC.; HICKORY SPRINGS
MANUFACTURING COMPANY; CRETE
CARRIER CORPORATION; and JASON
FEAGAN,

　　　Defendants.

Civil Action No.
1:22-cv-03008-SDG

### OPINION AND ORDER

This matter is before the Court on the motion to dismiss filed by Defendants

Crete Carrier Corporation and Jason Feagan [ECF 4] and Plaintiffs' motion to

remand [ECF 15]. For the following reasons, both motions are **DENIED**.

I.　　**Background**

A.　　**Factual Allegations**[1]

Plaintiff John Whitehead was employed by Defendant Crete Carrier

---

[1]　For purposes of this Order, the Court views the factual allegations in the light
most favorable to Plaintiffs. *Legg v. Wyeth,* 428 F.3d 1317, 1323 (11th Cir. 2005)
(stating that all questions of fact must be resolved in the plaintiff's favor when
evaluating a fraudulent joinder argument); *Bryant v. Avado Brands, Inc.*, 187
F.3d 1271, 1274 (11th Cir. 1999) ("At the motion to dismiss stage, all well-
pleaded facts are accepted as true, and the reasonable inferences therefrom are
construed in the light most favorable to the plaintiff.").

Corporation as a truck driver.[2] On October 9, 2014, John's wife, Veronica Whitehead, executed a Crete Carrier Corporation Release of All Passenger Liability Claims (Spouse) (the Spouse Release).[3] To summarize, the release permitted Veronica to ride as a passenger in trucks driven by John in exchange for releasing Crete and its employees and agents from "any liabilities, losses, claims and demands of any nature or type arising out of or related in any way to any loss, damage or injury, including death."[4] In executing the Spouse Release, Veronica "willingly and voluntarily assume[d] all risk of being a passenger."[5] Also on October 9, John signed a Driver's Release of Liability in which he released Crete and its employees and agents from "any liabilities, losses, claims and demands of any nature or type . . . arising out of or related in any way to any loss, [or] injury" resulting from any negligence, in exchange for allowing a passenger to ride with him.[6] John also executed Crete's General Rules of Conduct, and Authorization and Acknowledgment of Consequences of Transporting Unauthorized Passengers.[7]

---

[2]   ECF 1-2, at 8 ¶ 25.

[3]   *Id.* at 5 ¶ 7, 174.

[4]   *Id.* at 174.

[5]   *Id.*

[6]   *Id.* at 176.

[7]   *Id.* at 182–84.

Thereafter, Veronica was purportedly authorized by Crete to ride as a passenger in its trucks.[8]

On December 27, 2015, John was driving a tractor-trailer (the Vehicle) for Crete. Veronica was resting on a mattress in the sleeper berth of the Vehicle.[9] She was injured when one of the mattress's metal springs came through the mattress and punctured her skin; this led to a severe, life-threatening infection and left her with permanent injuries.[10] The mattress was designed, manufactured, and sold by Defendant Southerland, Inc.[11] The springs in the mattress were designed, manufactured, and sold by Defendant Hickory Springs Manufacturing Company.[12] Plaintiffs allege that Crete, through its agent Defendant Jason Feagan, "failed to select and maintain safe mattresses" in the Vehicle and failed to inspect the mattress that injured Veronica.[13] Plaintiffs further allege that Feagan's job

---

[8]   *Id.* at 187.

[9]   *Id.* at 5 ¶ 10.

[10]  *Id.* at 5 ¶ 10, 9 ¶ 30.

[11]  *Id.* at 8–9 ¶¶ 27, 31.

[12]  *Id.* at 8 ¶ 28, 10 ¶ 38.

[13]  *Id.* at 12 ¶¶ 46–47.

duties included the "supervision, inspection, and maintenance of the [Vehicle] and the subject mattress."[14]

## B.   Procedural History

John and Veronica originally filed suit in the State Court of Gwinnett County, Georgia on December 21, 2017.[15] They amended their complaint several times and conducted discovery.[16] Although Crete and Feagan moved to dismiss the state-court case on January 30, 2018, their motion was denied.[17] On January 3, 2022, John and Veronica dismissed that suit without prejudice.[18] On June 30, 2022, John and Veronica (this time through her guardian) renewed the complaint in the Gwinnett County State Court.[19]

---

[14]   *Id.* at 13 ¶ 52.

[15]   ECF 1, ¶ 4; ECF 1-2, at 22–37.

[16]   ECF 1-2, at 38–80. According to Crete and Feagan, "more than a year of intense discovery was conducted" during the original state-court action. ECF 1-1, at 17 n.27. Plaintiffs do not appear to dispute this contention.

[17]   ECF 15, at 1–2; ECF 15-5 (MTD); ECF 15-7 (State Court Order Denying MTD).

[18]   ECF 1-2, at 91–93.

[19]   *See generally* ECF 1-2.

Plaintiffs bring claims against Southerland and Hickory Springs for strict product liability and negligence, and seek punitive damages.[20] Veronica also asserts claims against Feagan for gross negligence and against Crete for gross negligence and respondeat superior.[21] While the comprehensive Spouse Release would, on its face, seem to bar Veronica's claims, Plaintiffs contend that Veronica has been legally incompetent her entire adult life; accordingly, they assert the Spouse Release is not binding.[22] Crete asserts a counterclaim against John for fraud and breach of contract for his alleged failure to disclose that Veronica was not competent to execute the Spouse Release.[23]

On July 29, 2022, Crete and Feagan, with the consent of all Defendants, timely removed to this Court based on diversity jurisdiction.[24] John and Veronica are citizens of Georgia.[25] Crete is a citizen of Nebraska.[26] Southerland is a

---

[20]   *Id.* at 15–16 ¶¶ 64–65, 17 ¶¶ 70–73. Veronica's claims are brought on her behalf by her guardian, Valerie Brooks. *Id.* at 5 ¶¶ 7, 9. For ease of reference, this Order refers to Veronica as though she is pursuing claims on her own behalf.

[21]   *Id.* at 16 ¶¶ 66–67.

[22]   ECF 1-2, at 177.

[23]   ECF 3, at 32–45.

[24]   ECF 1.

[25]   *Id.* ¶ 5; ECF 1-2, at 5 ¶ 7, at 188.

[26]   ECF 1, ¶ 6.

Tennessee citizen.[27] Hickory Springs is a citizen of North Carolina.[28] Feagan is a citizen of Georgia, but Crete contends that he was fraudulently joined.[29] Crete and Feagan filed a motion to dismiss.[30] Plaintiffs move to remand for lack of subject matter jurisdiction.[31] Although the issues raised in these motions overlap to a large extent, the Court must first address whether it has jurisdiction to hear this case.

## II.    Fraudulent Joinder

"[W]hen an action is removed from state court, the district court first must determine whether it has original jurisdiction over the plaintiff's claims." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). District courts have diversity jurisdiction over civil actions where the amount in controversy exceeds $75,000 and there is complete diversity of citizenship of the parties. 28 U.S.C. § 1332. Complete diversity does not exist "unless *each* defendant is a citizen of a different State from *each* plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978) (emphasis in original).

---

[27]  *Id.* ¶ 7.

[28]  *Id.* ¶ 8.

[29]  *Id.* ¶ 11.

[30]  ECF 4.

[31]  ECF 15.

Given the severe injuries Veronica allegedly suffered, the amount in controversy is easily satisfied here. But because Feagan is a citizen of Georgia, complete diversity is lacking and removal was improper unless he was fraudulently joined. 28 U.S.C. § 1441(b)(2); *Henderson v. Washington Nat. Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006). Fraudulent joinder occurs "[w]hen a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction." *Henderson*, 454 F.3d at 1281. When this happens, "the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court." *Id.*

The removing party bears the "heavy burden" of proving fraudulent joinder. *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011). It must show by clear and convincing evidence that "(1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Id.* (citing *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)). Crete and Feagan rely on the first prong. "The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts

submitted by the parties." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998).

This standard of review is "similar to that used for ruling on a motion for summary judgment" because the Court can examine evidence beyond the pleadings. But it is not the same:

> When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law. *If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court.*

*Crowe*, 113 F.3d at 1538 (emphasis added) (citations and internal quotation marks omitted). Further, "the district court must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor." *Pacheco de Perez*, 139 F.3d at 1380. *See also Legg,* 428 F.3d at 1323.

## A.    The Parties' Arguments

Plaintiffs contend that, because they have stated claims against Crete and Feagan, the case should be remanded.[32] John allegedly informed Feagan (who was

---

[32]   ECF 15.

purportedly John's terminal manager) that the Vehicle's mattress was failing and needed to be replaced.[33] Plaintiffs further point to their allegations that Feagan's job duties included inspecting and maintaining the Vehicle and mattress and that he failed to maintain them in a safe condition.[34] Plaintiffs rely on the state court's order denying Crete and Feagan's motion to dismiss the original action, which concluded that Veronica had stated a claim.[35] And, even if the Spouse Release is enforceable, Plaintiffs contend that Veronica may recover for gross negligence.[36]

All Defendants oppose the remand motion.[37] Crete and Feagan argue that Veronica cannot show gross negligence by Feagan and that her "renunciation" of the Spouse Release rendered her a trespasser in the Vehicle at the time of the accident, requiring willful or wanton conduct to hold Feagan liable.[38] Crete and Feagan also argue that Plaintiffs cannot show Feagan owed a duty to Veronica or breached that duty.[39] Hickory Springs points to the evidence obtained during

---

[33]   ECF 15-1, at 2.

[34]   *Id.* at 13 (citing ECF 1-2, at 11–12 ¶¶ 52–53, 55).

[35]   *Id.*

[36]   *Id.* at 14–15, 19–20.

[37]   ECF 22 (Crete/Feagan); ECF 23 (Hickory Springs); ECF 24 (Southerland).

[38]   ECF 22.

[39]   ECF 4.

discovery in the original state-court action to demonstrate that there is no possible claim against Feagan.[40] For the most part, Southerland adopts the arguments made by the other Defendants.[41]

Regardless of the level of negligence Plaintiffs may ultimately be required to prove (gross or willful and wanton) and Veronica's status as a trespasser (or not), the Court concludes that Veronica cannot possibly establish a cause of action against Feagan. His joinder was therefore fraudulent.

### B.    Analysis

#### 1.    The Relevant Facts

The parties' briefing presents misleading characterizations of Plaintiffs' pleading and the relevant evidence.[42] Accordingly, the Court summarizes relevant information based on the source materials themselves.

---

[40]   ECF 23.

[41]   ECF 24.

[42]   For instance, Plaintiffs argue that John's deposition testimony "unequivocally shows that Feagan was involved in denying [John's] request for a new mattress in either October or November 2015." ECF 25, at 4. As will be seen below, the deposition testimony demonstrates only that Feagan was present when John made a request for a new mattress. Plaintiffs have presented no evidence demonstrating that Feagan himself was responsible for inspecting or replacing John's mattress. Crete and Feagan argue that the only communication between John and anyone at Crete asking for a new mattress occurred in May 2015. ECF 22, at 8–9. But the evidence, which must be interpreted in Plaintiffs' favor,

John requested a new mattress for the Vehicle, which he received sometime in May 2015.[43] Crete's drivers are required to submit all requests for service or equipment so that they can be documented in the work order system.[44] That system reflects only one request by John for a new mattress—made in May 2015.[45] That May 2015 mattress is the one that allegedly injured Veronica.[46] However, John testified that he asked for a(nother) new mattress on October 5, 2015 and on November 27, 2015. Both times his request was based only on the fact that his current mattress was hurting his hips.[47] One of those two times (but John does not recall which), Feagan was "behind the gentleman that's running the counter."[48]

---

suggests that John made requests in May *and* in October and November. ECF 15-4, at 3–4; ECF 22-1, at 22, 23, 69; ECF 22-2, ¶¶ 7, 18.

[43]   ECF 22-1, at 22, 23; ECF 22-2, ¶ 7.

[44]   ECF 22-2, ¶ 15.

[45]   *Id.* ¶ 18. Although Crete's system reflects that John's request was made in May 2015, John's deposition testimony suggested that the request might have been made in April. ECF 22-1, at 22–23. This discrepancy is immaterial to the issue before the Court.

[46]   ECF 22-2, ¶ 18.

[47]   ECF 15-4, at 4; ECF 22-1, at 69.

[48]   ECF 15-4, at 3–4; ECF 22-1, at 69.

On that occasion, John was told by someone that "[w]e're not in the mattress business, we're in the freight hauling business."[49]

Feagan was the shop manager of Crete's Marietta facility from around 2015 through the time of his deposition in August 2019.[50] Before that, he was in a position that "concerned replacing mattresses in the trucks."[51] He was not, however, responsible for selecting mattress suppliers or the types of mattresses used by Crete in its trucks.[52] Feagan testified that, if a driver complained about a mattress and a "tech or somebody at the front counter" refused or failed to replace the mattress, he would discipline that person.[53] However, mattresses are not a specific item to be inspected during preventative maintenance evaluations of Crete's tractor-trailers.[54] Feagan avers that John never said to him or in his presence that the Vehicle's mattress "was failing, in disrepair, or needed to be replaced."[55] Nor did Feagan's job duties in 2015 involve "processing or approving

---

[49]   ECF 15-4, at 4.

[50]   ECF 15-3, at 4; ECF 22-2, ¶¶ 2–3.

[51]   *Id.*

[52]   ECF 22-2, ¶ 9.

[53]   ECF 15-3, at 3.

[54]   *Id.*

[55]   ECF 22-2, ¶ 17.

parts requests" (which would have included the mattress) or directly supervising those responsible for processing such requests.[56] Feagan denies playing any role in a request by John for a new mattress, and denies having had any responsibility for inspecting mattresses provided to any Crete driver.[57]

Thus, despite Plaintiffs' argument otherwise, this testimony does not "unequivocally show[ ] that Feagan was involved in denying" John's request for a new mattress.[58] At best, Plaintiffs can only demonstrate that Feagan was present during one instance in either October or November 2015 when John asked for a new mattress because the one he had hurt his hips. Plaintiffs have presented no evidence in support of the bare allegations in their complaint that Feagan was responsible for inspecting or replacing the Vehicle's mattress.

### 2. Feagan's Duty

In Georgia, "to recover for injuries caused by another's negligence, a plaintiff must show four elements: a duty, a breach of that duty, causation and damages." *Goldstein, Garber & Salama, LLC v. J.B.*, 300 Ga. 840, 841 (2017) (citation omitted). Crete and Feagan argue that Plaintiffs cannot show that Feagan owed

---

[56]   *Id.* ¶ 21.

[57]   *Id.* ¶¶ 22–23.

[58]   ECF 25, at 4.

any duty to Veronica since there is no general duty to protect the world from an unreasonable risk of harm.[59] They also assert that Plaintiffs have not alleged how Feagan breached any such duty.[60] Plaintiffs contend that they pleaded Feagan was responsible for supervising, inspecting, and maintaining the Vehicle and, therefore, the mattress.[61] But when the Court is faced with declarations and deposition testimony in opposition to a motion to remand, the question is not whether the pleading adequately alleges a claim. *Pacheco de Perez*, 139 F.3d at 1380. Instead, the issue is whether, in light of the allegations in the complaint ***and the evidence presented***, the defendants have shown by clear and convincing evidence that there is no possibility the plaintiffs can establish a cause of action against the non-diverse defendant. *Stillwell*, 663 F.3d at 1332.

Feagan can only be personally liable to Veronica for those tortious acts that he personally committed or directed to be done. *Smith v. Hawks*, 182 Ga. App. 379, 385 (1987). In other words, Feagan must have had some direct role in, or responsibility for, inspecting or replacing the mattress or making sure that it was inspected and replaced. In light of the testimony supplied by Defendants,

---

[59]   ECF 4, at 17–18.

[60]   *Id.*

[61]   ECF 15-1, at 13–14.

Plaintiffs fail to explain how Feagan owed a duty to Veronica, or how Feagan breached such a duty. Plaintiffs have not pointed to any evidence that Feagan was responsible for filling or approving requests for equipment or for inspecting mattresses in 2015. They cannot rely on the bare allegations of the complaint in the face of the sworn testimony that Feagan had no responsibility for inspecting or replacing the mattress that injured Veronica. *Shannon v. Albertelli Firm, P.C.*, 610 F. App'x 866, 871 (11th Cir. 2015); *Legg*, 428 F.3d at 1323–25; *Snadon v. SEW-Eurodrive Inc.*, 421 F. Supp. 3d 1360, 1368 (N.D. Ga. 2019).

To the extent Plaintiffs argue this Court must conclude that a claim against Feagan is possible because the state court denied Crete and Feagan's motion to dismiss in the original case, Plaintiffs are mistaken. Unlike a motion to dismiss ruled on by a Georgia court, a federal court assessing fraudulent joinder can examine evidence beyond the allegations in the pleadings. The state court did not have (and could not have relied on) the deposition testimony Defendants provided in support of their fraudulent joinder arguments. Plaintiffs were required to come forward with some evidence to dispute that testimony. *Shannon*, 610 F. App'x at 871; *Legg*, 428 F.3d at 1323–25. They failed to do so. When a defendant presents affidavits or deposition transcripts that are unrebutted by the plaintiff, the Court

cannot resolve the facts in the plaintiff's favor based solely on unsupported allegations in the complaint.

And Plaintiffs' contention that they should be allowed to conduct more discovery to uncover additional evidence in support of their remand motion[62] falls flat in the face of the extensive discovery that was taken during the original action—including the depositions most central to this issue, those of Feagan and John.[63] Nor have Plaintiffs identified any additional discovery they supposedly need in order to counter the evidence supplied by Defendants.[64]

Plaintiffs have failed to show even the possibility that Feagan could be found personally liable for negligence under Georgia law. As a result, the Court concludes that Defendants have shown by clear and convincing evidence that Feagan was fraudulently joined. *Stillwell*, 663 F.3d at 1332; *Crowe*, 113 F.3d at 1538. Feagan's citizenship must therefore be ignored for purposes of assessing the existence of diversity jurisdiction. *Henderson v. Washington Nat. Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006); *Snadon*, 421 F. Supp. 3d at 1368–69. Because there is

---

62   ECF 25, at 8–9.

63   ECF 22-1 (John Dep.); ECF 25-1 (Feagan).

64   ECF 25, at 8.

complete diversity without Feagan, the Court has subject matter jurisdiction over this case and it may consider Crete and Feagan's motion to dismiss.

## III.   Motion to Dismiss

### A.   The Parties' Arguments

The motion to dismiss repeats the assertion that Feagan was fraudulently joined.[65] Those arguments are addressed above. Crete and Feagan also argue that Veronica was a trespasser at the time of the accident and Plaintiffs have failed to allege the willful or wanton conduct necessary to establish a negligence claim against them.[66] In response, Plaintiffs rely on the arguments presented in their motion to remand.[67] Crete and Feagan also assert that any claims against them by John are barred,[68] but John has not brought any claims against them.[69]

### B.   Applicable Legal Standard

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must now contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

---

[65]   ECF 4, at 16–18.

[66]   *Id.* at 18–23.

[67]   ECF 16.

[68]   ECF 22, at 10–11.

[69]   *See generally* ECF 1-2, at 3–20.

*Am. Dental Ass'n v. Cigna Corp.,* 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint fails to state a claim when it does not "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint is plausible on its face when a plaintiff pleads sufficient factual content for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Am. Dental Ass'n,* 605 F.3d at 1289 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must also present sufficient facts to "'raise a reasonable expectation that discovery will reveal evidence' of the claim." *Am. Dental Ass'n*, 605 F.3d at 1289 (quoting *Twombly*, 550 U.S. at 556).

## C.   Discussion

### 1.   Gross Negligence

Veronica asserts claims against Crete and Feagan for gross negligence. Under Georgia law, such negligence is defined as "equivalent to the failure to exercise even a slight degree of care." *Ga. Trails & Rentals, Inc. v. Rogers*, 359 Ga. App. 207, 217 (2021), *reconsideration denied* (Mar. 30, 2021), *cert. denied* (Sept. 8, 2021)

(citations omitted). Specifically, "slight diligence is that degree of care which every man of common sense, however inattentive he may be, exercises under the same or similar circumstances. . . . The absence of such care is termed gross negligence." O.C.G.A. § 51-1-4.

Crete and Feagan contend that Plaintiffs are required to allege that they engaged in willful and wanton conduct in order to state a claim because Veronica "renounced" the Spouse Release and was therefore a trespasser.[70] The enforceability of the Spouse Release is, however, dependent on highly disputed facts that cannot be resolved on a motion to dismiss. And the release's enforceability affects the attendant duties that may have been owed to Veronica.

Plaintiffs allege that Veronica was mentally incompetent at the time she signed the Spouse Release and throughout her entire adult life.[71] Defendants appear to accept that allegation as true for purposes of their motion to dismiss.[72] Crete and Feagan also suggest that Veronica had not been appointed a legal guardian at the time she executed the Spouse Release[73]—something Plaintiffs do

---

[70]  ECF 4, at 18–21.

[71]  ECF 1-2, at 5 ¶¶ 8–9.

[72]  ECF 4, at 18–19.

[73]  ECF 22, at 6 n.16 (indicating that Veronica was subsequently appointed a guardian).

not appear to contest. Nor do Plaintiffs argue that Crete or Feagan were aware of Veronica's incompetency at the time she signed the release.

Treating these various facts as true for immediate purposes then, the Spouse Release *may* be voidable by Veronica's legal guardian. *Metter Banking Co. v. Millen Lumber & Supply Co.*, 191 Ga. App. 634, 638 (1989) ("[C]ontracts of a mentally incompetent person who has not been adjudicated incompetent are voidable at the option of a guardian or representative . . . ."); *Ga Power Co. v. Roper*, 201 Ga 760, 761 (1947) ("The contract of an insane person, a lunatic or a person non compos mentis, who has never been adjudicated to be insane, or a lunatic, or of unsound mind as prescribed by the Code, is not absolutely void, but only voidable.").[74] In such circumstances, if a legal guardian later repudiates the contract, the incompetent person must "make restitution of the benefits received under the agreement, so as to restore the parties as far as possible to their status quo." *Roper*, 201 Ga. at 762 (citations omitted). However, when a contract is no longer executory and it is impossible to restore the parties to the position they were in before the performance, the incompetent person cannot "avoid[ ] the consequences of an executed voidable contract." *Carr v. Sparks*, 213 Ga. 606, 608 (1957).

---

[74] The Court does not adopt or endorse the antiquated terminology in Georgia's decades-old case law.

> Even where there has been no such actual ratification of a contract thus made (by one who is actually insane), but where there has been no adjudication of the fact of insanity, and the opposite party to the contract was ignorant of the other's disability, and had no reasonable cause to suspect it, and the contract was fair and reasonable in its terms, and it is shown that the contract was entered into in good faith, without fraud or undue influence, and was founded upon a valuable and adequate consideration, and that the insane party has actually received the full benefit of the contract, and the parties can not be restored to the status quo, the liability under the contract will be upheld, not so much upon the theory of enforcing the promise because of the making of the contract itself as upon the idea that the insane party ought not to enjoy the full, adequate, and irrestorable benefit of the contract ordinarily merely voidable, without himself complying with the terms thereof.

*Id.* at 608–09 (citations omitted).

This exception may fit the facts alleged by Plaintiffs here, but the parties made no argument on this legal issue. By virtue of Veronica having signed the Spouse Release, Crete authorized her to ride in the vehicle with John in exchange for releasing Crete from liability for any negligence.[75] Since she rode in the Vehicle, the contract was arguably executed and Veronica may not be able to avoid the consequences of the agreement, even if it were otherwise voidable. If Veronica was

---

[75]   ECF 4, at 35.

a trespasser, she may have to establish willful and wanton conduct by Crete and Feagan in order to recover.

In short, the legal determination of the level of duty owed to Veronica is intensely fact-dependent and the Court cannot resolve these issues on a motion to dismiss. Since it is required to view the allegations in the light most favorable to Plaintiffs, the Court considers only whether the complaint states claims for gross negligence and does not address Crete and Feagan's contentions that Veronica was a trespasser who must prove willful and wanton conduct. Regardless of which standard (gross negligence or willful and wanton) ultimately applies, a party may not contract out of liability for either. *Holmes v. Clear Channel Outdoor, Inc.*, 284 Ga. App. 474, 477 (2007) ("Exculpatory clauses in which a business relieves itself from its own negligence are valid and binding in [Georgia], and are not void as against public policy ***unless they purport to relieve liability for acts of gross negligence or wil[l]ful or wanton conduct*.**") (emphasis added) (citation omitted).

### *i.* **Crete**

Plaintiffs allege that Crete is liable in respondeat superior for the torts of its employees and for gross negligence in failing to properly maintain, inspect,

replace, and warn about the mattress.[76] Plaintiffs contend that these claims are based on "active negligence" rather than premises liability law.[77]

> Georgia law distinguishes between negligence cases where a condition on the premises causes injury to someone and those where an employee's active negligence causes injury to someone. Liability is determined under the framework of premises liability **only if an injury is caused by a condition of the premises over which the premises owner/occupier has some degree of control, such as a static condition or passive defect.** If an injury is caused by the active negligence of an owner/occupier's employee, however, ordinary negligence principles apply.

*Arnold v. Word*, 356 Ga. App. 231, 233 (2020) (emphasis in original) (citations omitted). Crete and Feagan have not cited a single Georgia case suggesting that Plaintiffs' negligence claims should be governed by premises liability standards. Their reliance on negligence law from other jurisdictions without explanation is thus misplaced.[78] Active negligence claims (as do regular negligence claims) require proof of duty, breach, causation, and damages. *Byrom v. Douglas Hosp., Inc.*, 338 Ga. App. 768, 772 (2016) (citation omitted).

---

[76] ECF 1-2, at 16 ¶ 66. The parties do not address Plaintiffs' claim based on respondeat superior, so the Court does not consider it here.

[77] ECF 15-1, at 15.

[78] ECF 4, at 21–22 nn.36–40.

The complaint asserts that Crete was aware that many of its drivers had experienced problems with mattresses similar to those in the Vehicle and was grossly negligent because it failed to "select and maintain safe mattresses" in the Vehicle and to inspect the mattress.[79] If Veronica was authorized to ride in the Vehicle, Crete's duty to her to exercise some slight degree of care with regard to the Vehicle and its contents seems clear. But if Veronica was not so authorized, it is unclear what type of duty Crete would have owed her. Nor is it clear whether premises liability law or active negligence principals should be applied here. Plaintiffs make no argument that Crete itself owed Veronica any duty, other than as Feagan's employer, because "every individual owes a duty to exercise ordinary care not to injure others."[80] But it is unclear how that proposition fits these facts, when neither Crete nor Feagan actively injured Veronica. Rather, the complaint alleges that it was their inaction that led to her injury by the mattress.

Since the Court cannot determine at this stage whether Veronica was authorized to be in the Vehicle, it also cannot determine what level of duty Crete owed her. As such, and reading the allegations in the complaint in the light most favorable to Plaintiffs as it must, the Court concludes that Plaintiffs have

---

[79]   ECF 1-2, at 12–13 ¶¶ 46–49.

[80]   ECF 15-1, at 13 (citing *Long v. Adams*, 175 Ga. App. 538, 539 (1985)).

sufficiently pleaded that Crete was actively negligent and that it owed Veronica a duty to ensure the mattress was safe for use.

### ii. Feagan

The complaint alleges that Feagan was grossly negligent for "failing to properly maintain, inspect, replace, and warn of the mattress to ensure it was safe for its intended and foreseeable use."[81] He was allegedly responsible for the "supervision, inspection, and maintenance" of the Vehicle and mattress.[82] Feagan also purportedly "failed to take appropriate action" to ensure the mattress was safe, even though he knew mattresses like it were failing and presented risks to foreseeable users.[83] In support of their motion to dismiss, Crete and Feagan again argue that Feagan was fraudulently joined and assert that Plaintiffs cannot prove Feagan owed or breached a duty to Veronica.[84]

On the motion to dismiss, the Court may not consider the testimony used by Defendants to support their fraudulent joinder arguments. It may only consider the well-pleaded allegations of the complaint and the agreements signed by John

---

[81]   ECF 1-2, at 16 ¶ 67. *See also id.* at 12 ¶ 46.

[82]   *Id.* at 13 ¶ 52.

[83]   *Id.* at 13–14 ¶ 55.

[84]   ECF 4, at 16–18.

and Veronica, the authenticity of which is not in dispute. *Adamson v. de Poorter*, No. 06-15941, 2007 WL 2900576, at *2 (11th Cir. Oct. 4, 2007) (discussing incorporation by reference); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (same); *Bryant*, 187 F.3d at 1274 (indicating that well-pleaded facts are accepted as true and viewed in the light most favorable to the non-movant). Thus, whether Plaintiffs can ultimately prove the claim against Feagan is not the issue. As noted above with regard to Crete, if Veronica was authorized to ride in the Vehicle, Feagan might have owed at least a "slight duty" to Veronica to ensure that he properly inspected and maintained the mattress. The complaint alleges Feagan failed to do this, which is sufficient to allege a breach. The arguments that Feagan owed no duty to Veronica are based on evidence the Court may not consider at this point. Nor have Crete and Feagan pointed to any case law requiring the Court to dismiss the claims against Feagan simply because he was fraudulently joined.

## IV.   Conclusion

Plaintiffs' motion to remand [ECF 15] is **DENIED**. Crete and Feagan's motion to dismiss [ECF 4] is **DENIED**. John is **DIRECTED** to file an **ANSWER** to Crete's Counterclaim [ECF 3] within 14 days after entry of this Order.

Within 30 days after entry of this Order, the parties are **DIRECTED** to file the Joint Preliminary Report and Discovery Plan. Discovery shall commence 30 days after entry of this Order.

**SO ORDERED** this 31st day of March, 2023.

Steven D. Grimberg
United States District Court Judge